**OF THE**
**STATE OF DELAWARE**

BONNIE W. DAVID
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Date Submitted: May 5, 2026
Date Decided: June 15, 2026

Lacy E. Holly, III, Esquire
Holly & Morton, L.P.
603 Main Street
P.O. Box 700
Odessa, DE 19730

Brian T. Riggin, Esquire
Parkway Law LLC
3171 DuPont Parkway, Suite B
Townsend, DE 19734

RE:   *Van Horn v. Townsend Real Estate & Business Development 315/317 Land Trust*,
      C.A. No. 2024-0291-LM (BWD)

Dear Counsel:

This letter opinion resolves exceptions to the Magistrate in Chancery's March 3, 2026 re-issued Post-Trial Final Report (the "Final Report") in the above-referenced matter.

The petitioner in this action, Michael Kelvin Van Horn ("Petitioner"), seeks an order quieting title in his favor to a 50-by-100-foot tract of land located within 315 and 317 Gray Street, Townsend, Delaware (the "Disputed Property"), purportedly acquired through adverse possession.[1]  Final Report at 2–3.  The

---

[1] The following facts are drawn from the Final Report and the record developed at a September 24, 2025 trial.  Magistrate's Final Report Re-Issued [hereinafter Final Report],

respondent, Townsend Real Estate & Business Development 315/317 Land Trust

("Respondent"), is the record owner of the Disputed Property. *Id.* at 3–4; JX 4.

The Disputed Property lies directly across the street from 567 Fulton Street,

Townsend, Delaware. Final Report at 3. Petitioner's grandparents purchased 567

Fulton Street in 1942 and began to use the Disputed Property sometime after,

eventually erecting a garage and a fence on it. *Id.* at 4. In 2014, Petitioner purchased

567 Fulton Street from his grandmother's estate[2] and continued to use the Disputed

Property. *Id.* at 5; Tr. (Michael Van Horn) at 35:18–24, 51:12–19.

When Petitioner acquired 567 Fulton Street, he believed he owned the

Disputed Property as well. But later that year, nonparty and purported "crab man"

Harry Jennings, acting on Respondent's behalf, called police out to the property,

asserting that Respondent was the record owner of the Disputed Property. Tr.

(Michael Van Horn) at 52:2–14. At trial, Petitioner conceded that he learned of

Respondent's claim to the Disputed Property through these events:

---

Dkt. 66. Joint exhibits are cited as "JX __" unless otherwise defined. Trial testimony is
cited as "Tr. (Witness) at __".

[2] Respondent argues that the Final Report "failed to address the Petitioner's questionable
ownership of 567 Fulton Street." Resp't's Opening Br. in Supp. of Exceptions Taken to
the Magistrate's Final Report [hereinafter OB] at 8–9, Dkt. 69. The trial record supports
the Magistrate Judge's finding that Petitioner purchased 567 Fulton Street in 2014. *See* JX
7 (deed reflecting Petitioner's purchase of 567 Fulton Street from his grandmother's estate
on March 25, 2014); Tr. (Michael Van Horn) at 84:2–7.

Q.  When did you first learn there was any question at all about your right to own or possess or use the property?

A.  2014.

Q.  Before 2014, was there ever any disagreement about the use of your lot?

A.  Not that I'm aware of.

Q.  Who disputed your ownership to the use?

A.  Mr. Jennings.

Q.  And what did Mr. Jennings claim?

A.  He claimed he owned it.

Q.  What was your knowledge of Mr. Jennings?

A.  I knew him as a crab man, a crab guy, crab boys, something like that, crab man.

*Id.* at 44:16–45:7.

To resolve the dispute, the parties entered into a handwritten agreement, dated July 12, 2014 (the "2014 Agreement"), in which Petitioner agreed to pay Jennings $1,250 "for back taxes" and $50 per month "for the use of the property w[h]ere garage is located." Final Report at 5; JX 9.[3] Petitioner now contends that he believed

---

[3] Jennings testified that he recalled signing the 2014 Agreement with Petitioner's son, whom he believed to be the owner of 567 Fulton Street.  Tr. (Jennings) at 149:11–150:5. Petitioner conceded, however, that he "or someone on [his] behalf draft[ed] [the] [2014]

in his "heart and soul" that he owned the Disputed Property but agreed to pay for his continued use to "keep the peace." Tr. (Michael Van Horn) at 53:7–9.[4]

Nearly ten years later, in 2023, Respondent began marketing the Disputed Property for sale. Final Report at 7. In response, on March 22, 2024, Petitioner initiated this action through the filing of a Petition to Quiet Title By Adverse Possession (the "Petition"). The action was assigned to a Magistrate in Chancery, who held a one-day trial on September 24, 2025. Dkt. 59. On March 3, 2026, the assigned Magistrate Judge re-issued her Final Report, concluding that Petitioner's grandparents acquired title to the Disputed Property through adverse possession, and that Respondent failed to prove its affirmative defenses of estoppel and laches. Final Report at 26–27. On March 9, Respondent filed exceptions to the Final Report (the "Exceptions"). Dkt. 67. Briefing was completed on May 5. Dkts. 69, 71–72.

Among other arguments, Respondent contends that the Final Report erred in rejecting its laches defense. OB at 9–10. I have reviewed the trial record and the Magistrate in Chancery's determinations *de novo*. *DiGiacobbe v. Sestak*, 743 A.2d

---

[A]greement," and later testified that his wife drafted the 2014 Agreement for him. *Id.* (Michael Van Horn) at 52:15–17.

[4] According to Respondent, in 2020, the parties entered into a second contract entitled a "Commercial Lease Agreement," under which Petitioner, as "Tenant," agreed to lease the Disputed Property from Respondent, as "Landlord," for $75 per month. JX 10. Petitioner denies ever signing that document. Tr. (Michael Van Horn) at 57:2–6.

180, 184 (Del. 1999). Having done so, I agree that the trial record supports a laches defense.

The equitable doctrine of laches "is rooted in the maxim that equity aids the vigilant, not those who slumber on their rights." *Whittington v. Dragon Gp., L.L.C.*, 991 A.2d 1, 8 (Del. 2009). Laches requires proof of three elements: "first, knowledge by the claimant; second, unreasonable delay in bringing the claim; and third, resulting prejudice to the defendant." *Id.* (quoting *Reid v. Spazio*, 970 A.2d 176, 182–83 (Del. 2009)).

It is clear from the trial record—indeed, it is undisputed—that Petitioner became aware of Respondent's claim to the Disputed Property no later than 2014, when Jennings called police to the Disputed Property, asserting that Respondent was the record owner. Tr. (Michael Van Horn) at 52:2–14; *see also id.* at 44:16–45:7 (conceding that Petitioner "first learn[ed] there was a[] question . . . about [his] right to own or possess or use the [Disputed] [P]roperty" in 2014); Pet'r's Closing Submission at 10, Dkt. 61 (asserting that Petitioner learned "the disputed portion may not be part of the property . . . in 2014"). At that time, Petitioner believed in

his "heart and soul" that he owned the Disputed Property, yet he agreed to pay Respondent "for the use of the" Disputed Property going forward.  JX 9; JX 18.[5]

The Final Report explained that "[b]eginning in 2014 . . . Petitioner became aware that something *could* be incorrect about his belief that he owned the disputed property," but found that Petitioner chose not to act "as a temporary measure to maintain peace."  Final Report at 24.  The events in 2014 did more than signal something "could" be incorrect about Petitioner's belief that he owned the Disputed Property; they unequivocally put Petitioner on notice of Respondent's claim to ownership of the Disputed Property.

As a point of contrast, in *Mitchell v. Dorman*, this Court rejected a laches defense where the plaintiff believed she owned a disputed tract of land, despite others "question[ing] her regarding the matter" on multiple occasions.  2004 WL 117580, at *3 (Del. Ch. Jan. 16, 2004), *aff'd*, 860 A.2d 810 (Del. 2004).  The Court found that, "[a]t most, the inquiries . . . put [the plaintiff] on notice that [her] belief might be mistaken, but the record d[id] not suggest that either the [defendants] or any of their predecessors-in-interest attempted to assert rights in the [disputed

---

[5] The Final Report cites Petitioner's testimony claiming that "none of the payment memos on the checks referred to the payments as rent[,]" but some checks do, in fact, indicate the payments were made for "rent" or "lot rent."  *See* JX 18 at 7–8, 10.

property] in any meaningful way[,]" particularly when they "never tried to stop her from using" the property and instead "decided to 'leave her alone and let her just think that [the property] [wa]s hers.'" *Id.* at *4.

Here, Jennings did more than simply question Petitioner about his ownership of the Disputed Property—Jennings brought police out to the Disputed Property, asserted Respondent's record ownership, and secured Petitioner's agreement to pay to use the Disputed Property. Those events plainly put Petitioner on notice of Respondent's claim of ownership.

Petitioner's failure to vindicate his rights for a ten-year period after those events was not reasonable. This Court has held that "the element of unreasonable delay involves consideration of whether the plaintiff acted with the degree of diligence that fairness and justice require." *Houseman v. Sagerman*, 2015 WL 7307323, at *8 (Del. Ch. Nov. 19, 2015). Petitioner did not act with reasonable diligence when, knowing Respondent claimed to be the record owner of the Disputed Property, he chose to "maintain peace" by continuing to pay Respondent to use the Disputed Property instead of acting to protect his rights.

Petitioner's extreme delay was also prejudicial to Respondent. A ten-year delay is presumptively prejudicial because "with time, evidence deteriorates. Memories fade, witnesses pass on, and evidence is lost or destroyed." *Buddenhagen*

*v. Clifford*, 2024 WL 2106606, at *28 (Del. Ch. May 10, 2024); *see also, e.g.*, *Deputy v. Deputy*, 2020 WL 1018554, at *53 (Del. Ch. Mar. 2, 2020) (describing "the difficulty of doing entire justice, when the original transactions have become obscure by time, and the evidence may be lost, or depends on the precarious memory of witnesses" (citation omitted)); *Eluv Hldgs. (BVI) Ltd. v. Dotomi, LLC*, 2013 WL 1200273, at *12 (Del. Ch. Mar. 26, 2013) (finding a six-year delay in bringing a claim was prejudicial in part because "memories have faded regarding the circumstances").  Beyond this, Respondent also paid taxes on the Disputed Property for ten years; forwent bringing an action for ejectment or to quiet title against Petitioner during this period; and listed the Disputed Property for sale, then missed out on offers when Petitioner finally decided to assert his rights.  Final Report at 7; JX 15; JX 8; Tr. (Michael Van Horn) at 78:18–24; *id.* (Jennings) at 216:14–217:4. Petitioner's claim is therefore barred by laches.

Because the trial record supports Respondent's laches defense, the Exceptions are sustained, and the Final Report is modified accordingly.  IT IS SO ORDERED.

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Vice Chancellor